Good morning, your honors. My name is Sally Behrens and I'm the counsel appointed by this court to represent Mr. Hubahib in his appeal of the BIA's decision to dismiss his asylum claim. With me is my colleague, Virginia Boster. We'd like to split our time today. Since we don't have a lot of time, I'll deal briefly with the jurisdiction issue. All right, so at five minutes, do you want me to tell you? Are you going to reserve any time for rebuttal? Let's reserve a minute for rebuttal. Okay. Counsel, would you please keep your voice up? The acoustics in this room are not very good. I will address briefly, to start, the jurisdiction issue that the government has raised in this case. The first and, I think, most important issue to bring to the court's attention is the recent Ramadan case. It was submitted in the government's 28-J letter. The Ramadan case clarifies that in cases such as this where there's a firearm conviction, the court still retains jurisdiction to address questions of law, constitutional questions. And questions of law, the case says, include mixed questions of law and fact. So there is, I think, a broader avenue for jurisdiction than was available when we did the briefing in this case, and that should be brought to the court's attention. There are two ways that the court exercises jurisdiction in this case. One is over those types of issues, questions of constitutional law and questions of law, including mixed questions of law and fact. The other is if this court were to find that the I.J. did not have sufficient evidence of the convictions on the firearm offenses in the record when he decided that issue. The government hasn't actually contested that the documents were insufficient to demonstrate that the charge was for a firearm conviction. What they argue instead is that because he didn't appeal that issue to the BIA that it can't be resolved here. But I don't think that's the law. I think under ye, this court still has to decide for itself whether or not it has jurisdiction under the relevant statute. And so I would submit that the documents in this case were very unclear and certainly weren't clear in convincing evidence as is required, and that this court should not have its jurisdiction restricted on the basis of the firearm charge. I'm at this point going to let Ms. Boster speak for a while on the asylum issue unless you have questions on jurisdiction. Good morning. My name is Virginia Boster, and I'm going to discuss Mr. Hoovey Heves' asylum and withholding of removal claims. The INA defines a refugee as a person who is unwilling or unable to return to their home country because of a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Well, maybe let's just sort of go right to the, you know, the point, because I think all the judges are familiar with the facts here, that there's a couple of things. I mean, obviously, a lot of people were killed here. But in particular, I know, you know, that Mr. Hoovey Heves stated that no one knew who killed the nephews. Was there any testimony as to the facts which would indicate that these deaths were politically motivated? Actually, the BIA, in its opinion, addresses and refers to the portion of the record that relates to the killing of Mr. Hoovey Heves' nephews. However, I think the more important point relates to the... But wasn't there anything in the record that says those deaths were politically motivated? Is there anything you can point me to? There is evidence in the record. Mr. Hoovey Heves testifies that his brother was killed because of his connection to the Philippine military. His wife also testifies that he was killed by the NPA because of his connection to the military. Furthermore, there's a newspaper article in the record that discusses the fact that the NPA was found to be responsible and found no motive to investigate. So then your argument is that I need to import those over to the nephews, even though there was testimony that they don't know why the nephews were killed. I think the nephews are really peripheral to Mr. Hoovey Heves' claim. The record is unclear as to why the nephews were murdered. However... The record is also unclear as to who took his land. The record is unclear as to each of these separate incidents. There's nothing in the record that ties them together, i.e. you're a member of the Keno family. We're going to go after all of you. These were all separate, unfortunate incidents, but nothing to show that they were being persecuted because they belonged to the same family. I agree that Mr. Hoovey Heves' testimony before the IJ was at times confusing. However, I do think that there's evidence in the record that ties all of these harms together. And what is that evidence? Mr. Hoovey Heves' asylum application and declaration to his asylum application were clear that it was the MPA who seized his family's land and the MPA who repeatedly threatened to kill him and his family. But the brother was killed because of the military, not because he was affiliated with the family that was being persecuted. I think that it's not clear that there was one particular reason for why Mr. Hoovey Heves' brother and sister were killed or why Mr. Hoovey Heves was threatened as well. It appears to me that Mr. Hoovey Heves' brother was killed in part because of his connection to the military, but that tie seems to be imputed to the rest. Well, I guess probably the best, there are a lot of all these isolated things out there. So what is your best evidence that any of the threats to family members were made by a political group? When you pull out, what's your, give me your best argument on that. I think the best argument is really the context of the situation. The land was seized by the MPA in the 1960s. Further down the line, Mr. Hoovey Heves was recruited to join the rebel forces. He declined, he at first agreed to join their forces if he could stay in school. After he graduated from high school, he then fled Mindanao, making it clear that he refused, in fact, reneged on his agreement and refused to join the forces. Then Mr. Hoovey Heves' brother and sister were killed because they were suspected of being military informers. Finally, Mr. Hoovey Heves was then threatened that he was going to be next. It seems clear that in the context of all, over time, and in the context of all these facts, that the MPA imputed an opposition to their cause to the Hoovey Heves family and killed not only Mr. Hoovey Heves' brother, but killed his sister, despite her direct connection to the military, and then proceeded to threaten Mr. Hoovey Heves that he was going to be next. Are pressures and threats to join the military a protected ground, though? No, not precisely. Elias Zacharias, I believe, hits that point. And Elias Zacharias did not hold that threats received in connection with attempts of recruitment could never be motivated by a protected ground. However, the Elias Zacharias case held only that a guerrilla organization's attempt to coerce a person into performing military service doesn't necessarily amount to a political opinion. But in that case, Elias Zacharias was recruited by guerrillas in Guatemala and refused to join their cause solely because he feared the Guatemalan government would retaliate against him, not because he disagreed with the guerrilla's point of view. Nor was there any evidence in the record in that case that the guerrillas actually imputed a contrary political opinion to Mr. Elias Zacharias. However, in this case, I think we have distinguishing facts. As I said before, the context shows that the MPA took all the pieces of the puzzle and, at least in part, imputed, took these actions against Mr. Hubichieff and his family because of a political opinion. Would you like to reserve the balance for rebuttal? Yes. Thank you. Good morning, Your Honors. May it please the Court. My name is Anne Tumai. I represent the United States. Section 242A2C precludes the Court from considering Petitioner Hubichieff's claims regarding his asylum eligibility. Ultimately, the Court's jurisdiction is over constitutional or legal questions, as Petitioner has stated, because he has been convicted of two firearms offenses. There is no question that he is subject to removal for those convictions. For one, he hasn't exhausted his administrative remedies by challenging that, and Petitioner has already conceded in their filings that the issue of his removability was never raised before the Board, and that is separate from the 242A2D provision. The legal question constitutional claims are not applicable where the claims have not been exhausted before the Board first, because the 242D1 provision is not covered by 242A2D. Are you suggesting that if a due process claim is raised, it cannot be considered, but we have no jurisdiction until all those other claims are exhausted? Your Honor, if there's a due process claim that could have been addressed by the Board, then the Court would not have jurisdiction. The statute is clear that nothing in subparagraph B or C or in any other provision of this chapter, other than this section, which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law. Well, this section is section 242D, includes section 242D1, in terms of the exhaustion requirement. And do you have any case law to that effect that we have no jurisdiction? Your Honor, this is something that has been developing, but at least in terms of the plain language of section 242A2D, it clearly provides that if there's any type of jurisdictional limits within section 242, that the Court is still bound by those requirements and the exhaustion requirements. I've seen no case law on this, and my understanding was that if a constitutional question is raised, it may not be a good argument. But we get jurisdiction to decide whether or not that constitutional argument is valid. Your Honor, respectfully, that may be true, but it has to be exhausted because the statute clearly states that the Court only has jurisdiction over constitutional questions or legal questions if there's no other jurisdictional limits covered within section 242. And the exhaustion requirement is covered under section 242. And you have no case interpreting that particular statute? No, Your Honor. The section 242A2D is a recent statutory addition by Congress that is being construed within the past year or two. When was it added? Your Honor, it was added in 2006. Thank you. Yes, Your Honor. And the decision in Ramadan is clearly distinguishable from this matter because Ramadan looked at the one-year time bar. And that is something that is a new development because the one-year bar requirement was a new development. What we have here is a question concerning asylum eligibility, which requires the application of the substantial evidence standard. In Ramadan, they only considered a question of mixed law, a question of mixed question of law and fact. And in this case, we only have a factual question. If we look at the legislative history that the Court applied in Ramadan, the legislative history also stated that besides the fact that when a court is presented with a mixed question of law and fact, and the Court should analyze the question to the extent there are legal elements, but should not review any factual elements, the legislative history stated that factual questions include those questions that courts would review under the substantial evidence or 242b4b standard, reversing only when a reasonable fact finder would be compelled to conclude that the decision below was erroneous. Historically and traditionally, the question of eligibility for asylum has always been under the substantial evidence standard, and therefore Congress clearly construed it as being a factual question. Because your time is limited, there's something I'd like to get down a little bit, the nitty-gritty of the actual facts here. That's right. The BIA order stated that Hubehieb had failed to identify his particular social group, yet in his brief to the BIA, Hubehied stated, respondent family has been persecuted, including the confiscation of family lands by a government official and the killing of foreclosed family members. Why was this statement not sufficient to identify Hubehied's family as a particular social group? Your Honor, it's hard to say. Part of it is because the lack of clarity concerning the evidence presented by Petitioner Hubehied, especially in terms of the basis for his alleged fear of persecution. For one, he discusses his family, but he also talks about the NPA. He talks about insurgent groups. He talks about rebellion groups. He talks about religious groups. So to the extent that he, the board stated that he failed to identify a particular social group, if anything it was because he did not specify as to what social group he was referring to. Not because your family can't be a social group, but because he mentioned many things that, as opposed to focusing the argument? Yes, Your Honor, because it's his burden of proving his eligibility, and he has to do so with clear testimony and evidence that would support his claim. Here the question is, does the record compel a finding that is contrary to the board's conclusion? And the answer is no, because of his inability to provide clear evidence to actually establish that the events that happened over 20 years ago would really establish any kind of past persecution or well-founded fear of future persecution, especially when we consider the fact that he returned to the Philippines twice. The events that he described that occurred, whether it was in the 1960s or the 1980s, they all took place prior to his travel to Saudi Arabia. And when he left the Philippines in the mid-1980s, all these events that he claims are the basis for his alleged fear took place prior to his departure. And what did he do after these incidents occurred? He left the Philippines and then he came back, not once, but twice. And it wasn't the only event that took place after the fact was the death of his two nephews. And as he stated, he doesn't know what the circumstances were there. And, in fact, his own testimony belies his claims that he has any specific fear of persecution. He states, I do not know what they are called or who they belong to, but they are continually harassing my family in terms of identifying the alleged persecutors. His burden is also to establish that he had or there is an organization or some group that either the government is unable or unwilling to control. He has not done so. His claims for asylum basically do not compel a finding that is contrary to the board's conclusion here. So even if the court were to reach the issue, which the court may not because based on the legislative history, the issue of his eligibility for asylum falls within the factual question and requires an application of the substantial evidence standard. Even if the court were to assume jurisdiction and consider his claims, it would not be valid and the court would still have to sustain the board's finding and find that the petition for review should be denied. Well, basically, he never connected the dots in the sense of all these acts were separate, distinct acts, not necessarily focused on his family. Yes, Your Honor. All right. Unless there's any other questions. No, there do not appear to be. Thank you for your argument. I won't speak for very long, but I did want to raise one. You can use your whole one minute and four seconds. I just wanted to raise there is one relatively new case, which unfortunately I didn't find in time to issue a 28-J letter or send a 28-J letter, but the Morales v. Gonzalez case, which is 2007 U.S. App 5266, applies Ramadan in the asylum context, so I think that would be helpful to us. Would you file that with the court? I will. Thank you. All right. This matter then will stand submitted. I want to thank both of you for your argument.
judges: D.W. Nelson, Callahan, Carney